IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, SOUTHERN DIVISION

```
BLANCA BLACK-GAMMONS,         )
                              )
     Plaintiff,               )
                              )  CIVIL ACTION NO.
     v.                       )   1:04cv819-MHT
                              )       (WO)
ZURICH AMERICA INSURANCE      )
COMPANY,                      )
                              )
     Defendant.               )
```

OPINION

Plaintiff Blanca Black-Gammons brings this lawsuit against defendant Zurich America Insurance Company asserting breach-of-contract and bad-faith claims under Alabama law. She requests declaratory judgment and damages because of Zurich America's failure to continue providing work benefits under an accident-insurance policy. This lawsuit removed from state to federal court on the basis of diversity-of-citizenship jurisdiction. 28 U.S.C.A §§ 1332, 1441.

After a complete review of the record and after oral argument, the court concludes that Black-Gammons's motion

for summary judgment should be denied and Zurich America's granted.[1]

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the

---

1. For purposes of § 1332, a corporation is a citizen of any State by which it has been incorporated and of the State where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Zurich America is incorporated under the laws of the State of Illinois, where it has its principal place of business. The statute provides that "in any direct action against the insurer of a policy or contract of liability insurance ... to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen." Id. However, this "direct action" proviso applies only to cases in which "a party suffering injuries or damages for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured...," and does not apply to those cases involving an insurer's duty to settle claims within policy limits or in good faith. Fortson v. St. Paul Fire & Marine Ins. Co., 751 F.2d 1157, 1159 (11th Cir. 1985). Therefore, diversity jurisdiction has been properly alleged in this case.

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the party seeking summary judgment must first inform the court of the basis for the motion, and the burden then shifts to the non-moving party to demonstrate why summary judgment would not be proper. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115-17 (11th Cir. 1993) (discussing burden-shifting under Rule 56). The non-moving party must affirmatively set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials in the pleadings. Fed. R. Civ. P. 56(e).

The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In doing so, the court must view the evidence in the light most favorable to the

3

non-moving party and draw all reasonable inferences in favor of that party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. BACKGROUND

On September 25, 2003, Black-Gammons, an independent contractor and an owner-and-operator of a tractor leased to U.S. Xpress, stopped to refuel her tractor in Oklahoma City, Oklahoma.[2] While exiting the tractor, she slipped and fell, experiencing brief paralysis and pain in her head, neck, and foot. She was transported to a hospital and diagnosed with "closed head trauma, vertigo trauma induced, and left 5th metatarsal fracture."[3]

After returning to Alabama, Black-Gammons sought medical treatment and filed a claim for medical benefits and total disability benefits under a Group Occupational

---

  2. Defendant's motion for summary judgment (Doc. No. 23), Exhibit 5 to, deposition of Blanca Black-Gammons, p. 156.

  3. Id., Exhibit 1, affidavit of Melanie Lisicky ("Lisicky affidavit"), p. 2.

Accident Insurance Policy issued by Zurich America to U.S. Xpress, Inc. Zurich America's policy includes both a Temporary Total Disability (TTD) benefit as well as a Continuous Total Disability (CTD) benefit. It is undisputed that both benefits apply only to injuries that meet the following definition: "Injury means an accidental bodily injury that is caused solely by accidental means and is independent of all other causes."[4]

The policy provides that either benefit may be paid only when the disability "resulted solely and directly" from an injury sustained while performing occupational duties, as opposed to disability resulting from sickness, disease, or repetitive or cumulative traumas.[5] Repetitive or cumulative traumas are defined in the policy as "conditions which impair the normal physiological function of the body over an extended period of time, but which do not arise as the result of a single physical

---

4. Exhibit 1 to Lisicky affidavit, group occupational accident insurance policy.

5. Id.

trauma."[6]  The CTD benefit will be paid only when the injured person "has been granted a Social Security Disability Award for such Continuous Total Disability."[7]

Zurich America paid Black-Gammons 32 weeks of TTD benefits beginning on October 1, 2003, at a rate of $ 392.30 per week, for a total payment of $ 12,553.60. Zurich America also paid $ 9,952.00 in medical and prescription expenses for Black-Gammons.[8]  In subsequent months, Black-Gammons's attending physician filed statements about Black-Gammons's injuries required by Zurich America.  The second to last report, completed on February 5, 2004, described the injuries as consisting of a healed fracture of the fifth metatarsal, cervical-disc syndrome, lumbar-disc syndrome, spinal stenosis, and "two severe large herniated discs at C5-6 and C6-7."[9]

---

    6.   Id.

    7.   Id.

    8.   Lisicky affidavit, p. 2.

    9.   Exhibit 7 to Lisicky affidavit, statement of Dr. Steven R. Beranek dated February 5, 2004.

6

trauma."[6]  The CTD benefit will be paid only when the injured person "has been granted a Social Security Disability Award for such Continuous Total Disability."[7]

Zurich America paid Black-Gammons 32 weeks of TTD benefits beginning on October 1, 2003, at a rate of $ 392.30 per week, for a total payment of $ 12,553.60. Zurich America also paid $ 9,952.00 in medical and prescription expenses for Black-Gammons.[8]  In subsequent months, Black-Gammons's attending physician filed statements about Black-Gammons's injuries required by Zurich America.  The second to last report, completed on February 5, 2004, described the injuries as consisting of a healed fracture of the fifth metatarsal, cervical-disc syndrome, lumbar-disc syndrome, spinal stenosis, and "two severe large herniated discs at C5-6 and C6-7."[9]

---

    6.   Id.

    7.   Id.

    8.   Lisicky affidavit, p. 2.

    9.   Exhibit 7 to Lisicky affidavit, statement of Dr. Steven R. Beranek dated February 5, 2004.

The physician sent a final report on February 26, 2004, describing Black-Gammons's disability as involving carpal-tunnel syndrome, S1 radiculopathy, and a (presumably healed) fracture of the fifth metatarsal.[10] After receiving this report, Zurich America requested clarification of the nature of Black-Gammons's injuries from her physician, who responded that the carpal-tunnel syndrome was not caused by the accident of September 25, 2003, that the S1 radiculopathy was a result of degenerative-disk disease, that prognosis for recovery of the fractured metatarsal was good, and that their were no other conditions affecting Black-Gammons.[11]

Based on these representations, Zurich America terminated Black-Gammons's insurance payments on June 15, 2004. Zurich America wrote in its termination of

---

10. Statement of Dr. Steven R. Beranek dated February 26, 2004. This statement was omitted from the evidentiary exhibits filed with Zurich America's motion for summary judgment, and was provided at the request of the court.

11. Exhibit 9 to Lisicky affidavit, faxed response of Dr. Steven R. Beranek dated March 18, 2004.

7

benefits letter that a review of the medical documentation revealed that Black-Gammons had been diagnosed with degenerative-disk disease, a medical condition excluded from coverage under the policy.[12]

Black-Gammons applied for social security disability benefits and was denied.  In her appeal of the denial, she wrote that, "the combination of my conditions prevents me from working.  I suffer from asthma, GERD, pain, as well as residual effects from brain injury, back injury, and depression."[13]  On July 22, 2005, an administrative law judge (ALJ) issed a decision awarding benefits to Black-Gammons, finding that she suffers from lumbar degenerative-disk disease, bilateral carpal-tunnel

---

12. Exhibit 10 to Lisicky affidavit, benefit termination letter.

13. Defendant's motion for summary judgment (Doc. No. 23), Exhibit 3, request for hearing by administrative law judge, form HA-501-U5.

syndrome, cervical-disk disease, asthma, panic attacks, and major depression.[14]

The ALJ also found that Black-Gammons had sustained a concussion of the cervical spinal cord, paralyzing her from the waist down for a short time, and resulting in "autonomic storms."[15] The final finding apparently stems from a doctor's note dated May 31, 2005, stating that Black-Gammons has "developed episodes of autonomic storms reasonably controlled with xanax" after sustaining a concussion of the cervical spinal cord.[16] The concussion apparently refers to Black-Gammons's accident, although this is not explicitly stated by the doctor or by the ALJ.

---

14. Id., Exhibit 4, Social Security Administration Office of Hearing and Appeals, decision of Harry C. Taylor, II., U.S. administrative law judge, pp. 1-2.

15. Id., p. 4.

16. Plaintiff's response to defendant's motion for summary judgment (Doc. No. 27). note of Dr. Hassan Kesserwani dated May 31, 2005.

Black-Gammons concedes that, except for the herniated cervical discs diagnosed in the second to last physician's report, none of her diagnosed conditions is eligible for benefit coverage under Zurich America's policy.

## III. DISCUSSION

### A. Breach-of-Contract Claim

A plaintiff can establish a breach-of-contract claim in Alabama by showing "(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages." State Farm Fire & Cas. Co. v. Slade, 747 So. 2d 293, 303 (Ala. 1999)(quoting Southern Medical Health Systems, Inc. v. Vaughn, 669 So. 2d 98, 99 (Ala. 1995).

It is not disputed that the insurance policy at issue in this case does not cover illness or disease, as opposed to injuries resulting "solely and directly" from

an accident. It is also not disputed that doctors have diagnosed Black-Gammons with non-injury-related illnesses. Zurich America has presented evidence that it terminated Black-Gammons's policy because doctors reported that her disability is the result of degenerative disc disease, independent of her work-related injury. Such disease would disqualify Black-Gammons for benefits under the explicit terms of the policy.

Zurich America has also submitted the affidavit of an expert witness who testifies that Zurich America evaluated and terminated Black-Gammons's benefits in accordance with the accepted standard of care in the insurance industry, and that Black-Gammons received all benefits to which the policy entitled her.[17]

Finally, Zurich America has introduced evidence that Black-Gammons herself understands her disability to be the result of more than accident-related injuries. In

---

17. Defendant's motion for summary judgment (Doc. No. 23), Exhibit 2, affidavit of John H. Allen.

11

appealing the original negative determination of eligibility for social security benefits, Black-Gammons asserted that her disability was caused by a combination of factors, most of which are not compensable under the Zurich America policy. The ALJ reviewing Black-Gammons's medical records agreed, and based his decision to grant benefits on his finding of multiple causes for the disability.

Black-Gammons has presented no medical evidence whatsoever that the herniated discs which form the only basis of her claim are solely and directly related to her accident, as opposed to stemming from the degenerative-disc disease with which she has been diagnosed. The only relevant evidence before the court supporting Black-Gammons's claim is her own affidavit stating that she was able to work before the accident, but not afterwards.[18]

---

18. Plaintiff's response to defendant's motion for summary judgment (Doc. No. 27), Affidavit of Blanca Black-Gammons, p. 1.

The court has no reason to doubt that this is true, but it does not automatically entitle Black-Gammons to benefits under the Zurich America policy. Black-Gammons has not argued that her degenerative disease was in some way precipitated by the accident. She has not argued, alternatively, that the injuries she sustained during the accident are solely responsible for her herniated discs, independent of the degenerative disc disease. Fatally for her claim, she has not even argued that the herniated discs are the sole cause of her inability to work.

In sum, Zurich America has produced evidence that Black-Gammons is ineligible for benefits under the clear terms of the insurance policy, and Black-Gammons has failed entirely to come forward with any argument, much less any specific facts, showing that summary judgment should not be granted on her breach of contract claim. See <u>Fitzpatrick</u>, 2 F .3d at 1115-16 ("For issues ... on which the non-movant would bear the burden of proof at trial, ... the moving party [for summary judgment]

13

simply may show[]--that is, point[] out to the district court--that there is an absence of evidence to support the non-moving party's case.") (citations and quotation marks omitted). Black-Gammons has failed to meet her burden, and summary judgment is granted in favor of Zurich America on the breach-of-contract claim.

### B. Bad-Faith Claim

Black-Gammons also asserts a claim of bad faith. Alabama law recognizes two types of bad faith claims--normal" and "abnormal"--each of which must be analyzed under a unique standard. Slade, 747 So. 2d 293. In a "normal" bad-faith case arising from an insurance claim, the plaintiff bears the burden of showing the absence of any reasonably legitimate or arguable reason for denial of a claim. Id. at 306.

This has been termed the "directed verdict standard," under which an allegation of bad faith in the failure to pay an insurance claim can be maintained only if the

plaintiff is entitled to a directed verdict; that is, if there is no factual dispute about the validity of the claim. National Sav. Life Ins. Co. v. Dutton, 419 So. 2d 1357, 1362 (Ala. 1982).

However, to discourage insurance companies from exploiting this exceptionally protective standard by failing to investigate claims properly, the Alabama Supreme Court has identified exceptions, or "abnormal" cases, in which bad faith can consist of: (1) intentional or reckless failure to "properly investigate the claim or to subject the results of the investigation to a cognitive evaluation and review," Thomas v. Principal Financial Group, 566 So. 2d 735, 744 (Ala. 1990); (2) the manufacture of a debatable reason to deny a claim, Slade, 747 So. 2d at 306; or (3) reliance on a "subjective belief" that an ambiguous portion of a policy provides a basis for denying a claim. Id.

Black-Gammons has never alleged that Zurich America failed to investigate her disability properly; nor does

she allege that Zurich America has manufactured a debatable reason for denying her claim, or that Zurich America has misinterpreted an ambiguous portion of the policy in bad faith. Black-Gammons's claim is that her disability is covered under the explicit terms of the policy, and Zurich America has failed to honor those terms. Therefore, her bad-faith claim is a "normal" one.

Because summary judgment is granted in favor of Zurich America on the breach-of-contract claim, Black-Gammons's bad-faith claim cannot survive summary judgment as a matter of law: "if any one of the reasons for denial of coverage is at least 'arguable,' [the] court need not look any further." State Farm Fire & Casualty Co. v. Balmer, 891 F.2d 874, 877 (11th Cir. 1990) (affirming order granting judgment notwithstanding the verdict in favor of appellee insurer on appellant insureds' claim of bad faith because insurer had an arguable basis for denying benefits at the time of denial). Not only is Zurich America's stated reason for

16

terminating Black-Gammons's benefits arguable, it entitles Zurich America to summary judgment.

Consequently, Black-Gammons's own motion for summary judgment will be denied, and Zurich America's motion for summary judgment will be granted on Black-Gammons's breach-of-contract and bad-faith claims.

An appropriate judgment will be entered.

DONE, this the 9th day of January, 2006.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE